JAMES VAN NEST ET AL., PLAINTIFFS-APPELLEES, v. FREDERICK DEALAMAN, DEFENDANT-APPELLANT.

Argued November 26, 1913—Decided March 16, 1914.

The provisions of the Fence act (*Comp. Stat., p.* 2299), requiring adjoining owners to make and maintain their respective proportions of partition fences, impose on an owner who is in default no liability for accidental injury to animals of the adjoining owner which stray upon his land by reason of the defect in the fence which he failed to repair.

---

On appeal from the Supreme Court, whose opinion is reported in 55 *Vroom* 564.

For the appellant, *Winfield S. Angleman* (*Swackhamer & Bird* on the brief).

For the respondent, *Frederick A. Pope.*

The opinion of the court was delivered by

PARKER, J. The sole question argued in and decided by the Supreme Court, and to which we confine ourselves on this appeal, is whether by reason of the obligations imposed by the Fence act an action accrues in favor of an owner who has done his part as required by the act, as against an adjoining owner who has not, and by reason of whose default cattle of the diligent owner have gone through the defective fence on land of the delinquent owner and then suffered injury. In the present case, as the jury could find, plaintiff's cow gorged herself with green corn and died in consequence. The Supreme Court held that there was a right of recovery.

That such a right did not exist at common law is of course elementary. The owner of cattle or other animals was required to keep them on his own premises, and had only himself to blame if they were accidentally injured or killed while straying. *Vandegrift* v. *Rediker,* 2 *Zab.* 185; *Price* v. *New Jersey Railroad Co.,* 2 *Vroom* 229; *Case* v. *Central Railroad Co.,* 30 *Id.* 471. And if they did damage under such circumstances the owner was liable. *Angus* v. *Radin,* 2 *South.* 957; 2 *Cyc.* 376.

No doubt such a liability as that asserted by the Supreme Court in the case at bar might arise out of a contract obligation to maintain a fence, as it has been held to arise out of a prescriptive right to have a fence maintained. *Lawrence* v. *Jenkins,* L. R., 8 Q. B. 274; 42 L. J. Q. B. 147; abstracted in 19 E. R. C. 24. But no such claim is made in the present case, and the liability, if it exist at all, must be based on the language or policy of the statute.

It is not to be found in the express language of the enactment, and we fail to find it indicated as a matter of legislative policy.

The Fence act substantially in its present form runs back

to 1730, and has not been materially changed since the Paterson Revision of 1799; and it is worthy of note that our reports fail to show any such claim as the present one having been urged in a court of justice.

The first section (*Comp. Stat., p.* 2299) prescribes what shall be a lawful fence, and provides that "all such beasts as shall creep through, get over or break down any such fence may be impounded, and the owner thereof shall be obliged to pay and satisfy all damages occasioned thereby in manner and form as by this act is directed."

Section 2 provides that adjoining owners shall make or amend and maintain a just proportion of the partition fence between them, except such persons as shall choose to let their adjoining lands lie vacant and open; and the remainder of this section and succeeding sections go on to prescribe how in case of refusal of one party to build or maintain, or disagreement, the other party may construct or keep up the fence and call in members of the township committee to supervise the location of it, and to appraise the cost of construction and repair and the proportion to be paid by each owner, and enforcement of the payment thereof. In case the fence is not kept up, because of a delinquent owner's default, the rights and liabilities of the parties are fixed by sections 9, 10 and 11, as follows:

(*a*) The beasts of the delinquent owner breaking through a defective fence into land of the diligent owner may be impounded to answer the damage done by them.

(*b*) If the beasts of some third party pass through the defective fence and do damage on land of the diligent owner the delinquent owner is liable in trespass for such damage.

(*c*) If the beasts of the diligent owner pass through the defective fence to land of the delinquent owner, the diligent owner is not liable in damage nor are his beasts liable to be impounded.

(*d*) A delinquent in fencing his own land as directed by the act may not impound the beasts of any other person that enter on his land because of such delinquency, nor recover for damages done by them.

(e) But a diligent owner may not hurt or kill animals trespassing through a gap in the fence left by a delinquent.

It will be observed that while the act provides a complete scheme for the enforcement of the mutual obligation to build and keep up a fence when desired by any adjoining owner, and defines various rights and provides various remedies both in case of its observance and its non-observance, it is silent as to the point involved in the case at bar. A diligent owner may impound animals of the delinquent owner that come through the defective fence, to answer such damage as they have done, but he cannot hurt or kill them. The delinquent owner is barred of all remedy for the injury done by trespassing animals resulting from his own delinquency; but on the other hand he is put under no obligation of care with respect to them. So far as relates to their own well being, they are still trespassing, notwithstanding the Fence act, and the duty of the delinquent owner is identical with his duty to any other trespasser, *i. e.*, to abstain from willful injury. The omission from the statutory scheme of any liability for accidental injury to trespassing animals, which the legislature could easily have included in the act if it had chosen, and which it actually did include in section 32 of the Railroad act of 1873 (*Rev., p.* 933; *Gen. Stat., p.* 2646), by requiring railroads to construct fences and cattle guards, and imposing liability for injury "done by their agent or engines to cattle, horses or other animals thereon" (*Van Duzer* v. *Lehigh and Hudson Railroad Co., 29 Vroom* 8), is persuasive to us that no such liability was intended.

The decisions from other jurisdictions, some of which are relied on by the Supreme Court, do not particularly aid us, because they are either based on statutes differing in important particulars, or take for granted the point now at issue. Thus, in *Clark* v. *Brown, supra,* the New York act, quoted at 18 *Wend.* 228, provided that "if any person liable to contribute to the reparation of a division fence shall neglect or refuse to make and maintain his proportion of said fence or shall permit the same to be out of repair, he

shall be liable to pay to the party injured all such damages as shall accrue thereby, to be ascertained and appraised by two fence viewers of the town and to be recovered with costs of suit." The New York Supreme Court held that the sole question was whether the ascertainment of this particular damage (death of cattle which got through a gap in the fence and gorged themselves with green corn) was committed to the fence viewers and held that it was not, intimating that an action on the case would lie instead of an action on the award of the viewers. *Id.*, 216, 217. The judgment was affirmed by an evenly divided court, the Chancellor (dissenting) holding that the fence viewers had jurisdiction; Senator Tracy, for affirmance, agreeing with the Supreme Court and holding further that the "damages" must be such as were proximately caused by the neglect and that the gap in the fence was not a proximate cause. The case is authority for nothing beyond the proposition that this class of damage was not within the jurisdiction of the viewers. It is noticeable that the legislature afterwards (1838) expressly restricted the damage recoverable to that done to grass and herbage. *Stafford* v. *Ingersol, 3 Hill* 38.

The other cases relied on by the Supreme Court are also distinguishable. In *Rooth* v. *Wilson,* 1 *B. & A.* 59, the liability was taken for granted, and the only question discussed was whether plaintiff as bailee had such a special property as would entitle him to sue. In *Powell* v. *Salisbury,* 1 *Y. & J.* 390, the court dealt solely with weight of evidence on a rule to show cause.

There is a class of cases where the statute lays down a duty without imposing a liability in express terms, and even where a penalty for non-observance is imposed, still an action on the case will lie in favor of a party injured. Suits for accidents at railroad crossings due to failure to give the statutory signals are the most familiar examples. Another is the liability of an owner for negligent failure to comply with the Tenement House act. *Cittadino* v. *Schackter,* 54 *Vroom* 593; *Pesin* v. *Jugovich, ante p.* 256; *Evers* v. *Davis, November Term,* 1913, to be reported in 86 *N. J. L. R.*

But in each case the statutory scheme must be examined, and if it is apparent on the face of the act that the legislature intended to provide specifically, not only penalties for infraction of the act but remedies in favor of persons injured thereby, the legislative remedy should be deemed exclusive and complete. Such, in our view, is the posture of the present case.

Without going into the question whether the failure to repair the fence should be regarded as the natural and proximate cause of the death of the plaintiff's cow—a question adversely decided elsewhere—we are of opinion that the provisions of the Fence act create no liability on the part of a delinquent owner for accidental injury to trespassing animals which would have been prevented by his performance of the statutory obligation to build and maintain a fence.

The trial court erred in refusing to direct a verdict for defendant. This was duly excepted to and was specified as a ground of appeal. For the reasons given the judgment is reversed and a new trial ordered.

*For affirmance*—None.

